**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph C. Elliott,
    Petitioner,

vs.                                    Case No. 1:04cv780
                                          (Beckwith, C.J.; Black, M.J.)

Patrick Hurley,
    Respondent.

**REPORT AND RECOMMENDATION**

       On November 8, 2004, petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, filed the instant *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (Doc. 3). On July 27, 2005, attorney John J. Cranley, IV, of the Ohio Innocence Project, entered an appearance in the case on petitioner's behalf and filed a motion to stay the proceedings pending the exhaustion of state remedies. (Docs. 14, 15). This matter is now before the Court for ruling on petitioner's motion to stay the proceedings (Doc. 15), which is opposed by respondent (Doc. 16).

---

    [1] The petition initially was filed in the Eastern Division of the United States District Court for the Southern District of Ohio, where petitioner's motion for leave to proceed *in forma pauperis* was granted. (*See* Doc. 2). By Order entered November 8, 2004, the case was transferred to this Court for all further proceedings. (Doc. 4). Although the case was originally assigned to the docket of United States Magistrate Judge Timothy S. Hogan, it was transferred to the undersigned when Judge Hogan recused himself from the case by Order entered September 23, 2005. (*See* Doc. 17).

## Procedural Background

This case has a long and complicated procedural history.

On November 18, 1994, petitioner was indicted by the Hamilton County, Ohio, grand jury on two counts of rape as defined in Ohio Rev. Code § 2907.02 and two counts of aggravated burglary as defined in Ohio Rev. Code § 2911.11. (Doc. 11, Ex. 1). Prior to trial, petitioner filed a motion for appointment of an expert to conduct DNA testing. Petitioner's motion was granted, and the trial court appointed Cellmark Laboratories ("Cellmark") to perform DNA tests based on "blood samples of the Defendant and the alleged victim, and all items of physical evidence which possibly contain blood stains of the attacker and any other items ... necessary to perform said tests" in the possession of the Hamilton County Coroner's Office or Hamilton County Prosecutor's Office. (*See id.,* Ex. 3). On the State's motion, which was granted, the forensic items originally submitted for DNA testing apparently were retested by Cellmark before petitioner's trial commenced. (*See id.,* Exs. 4-5).

After a trial before a jury, petitioner was found guilty as charged.

Thereafter, petitioner's trial counsel filed a motion for new trial, claiming, among other things, that petitioner was "deprived of a fair trial on the basis of surprise" because he was unaware that Cellmark performed DNA tests on bloodstain samples obtained from the victim's nightgown which were different from samples tested at the Coroner's Office. (*See id.,* Ex. 6). The motion for new trial apparently was overruled during petitioner's sentencing hearing. (*Id.,* Brief, p. 3).

On January 2, 1996, petitioner was sentenced to concurrent terms of eight (8) to twenty-five (25) years for the rape offenses, as well as an eight (8) to twenty-five (25) year term of imprisonment on one of the aggravated burglary counts to be served consecutively to the sentences imposed for rape.[2] (*Id.,* Ex. 7).

With the assistance of counsel, petitioner appealed his convictions to the

---

[2] The second aggravated burglary count was merged for sentencing as an "allied offense of similar import." (*See* Doc. 11, Ex. 7).

Ohio Court of Appeals, First Appellate District, asserting as assignments of error that (1) the verdicts of guilt were against the manifest weight of the evidence; (2) the trial court erred in overruling his motion for mistrial based on certain statements made by a witness regarding prior arrests; and (3) the trial court erred in not allowing trial counsel to review *in camera* previous testimony and statements of the victim. (*Id.,* Ex. 8). On December 24, 1996, the Court of Appeals issued a Decision overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.,* Ex. 10).[3]

On November 6, 1996, while his direct appeal was pending before the Ohio Court of Appeals, petitioner's appellate counsel filed in the Hamilton County Common Pleas Court a petition for post-conviction relief, raising two claims that were identical to two of the assignments of error asserted on direct appeal, as well as a claim of ineffective assistance of trial counsel. (*Id.,* Ex. 13). Counsel also filed a motion for post-trial DNA testing on a blood stain obtained from the victim's nightgown that previously had only been "blood typed" by Cellmark. (*Id.,* Ex. 14). On December 12, 1996, in separate orders, the trial court denied both the post-conviction petition and the motion for post-trial DNA testing. (*Id.,* Exs. 17-18).[4]

Apparently thereafter, petitioner filed a second motion for post-trial DNA testing. That motion was granted on March 19, 1997. (*Id.,* Ex. 21). On July 21, 1997, the trial court ordered that the victim's nightgown be sent to Genelex Laboratory (Genelex) for "independent testing." (*Id.,* Ex. 22).

On January 12, 2001, nearly three and one-half years after the additional testing was ordered, petitioner filed in the Hamilton County Common Pleas Court a *pro se* motion for new trial "due to newly discovered evidence." (*Id.,* Ex. 23). Genelex's "Forensic Laboratory Report" dated April 15, 2000 was attached as an

---

[3] Petitioner apparently did not perfect a timely appeal to the Supreme Court of Ohio. Instead, nearly three years later on September 30, 1999, petitioner filed a *pro se* motion for leave to file a delayed appeal, which was denied by the Supreme Court of Ohio without opinion on November 10, 1999. (*Id.,* Exs. 11-12).

[4] Petitioner apparently appealed these rulings to the Ohio Court of Appeals, First Appellate District, but the appeal was dismissed on petitioner's request on May 27, 1997. (*Id.,* Exs. 19-20).

exhibit to the motion. The report states that it was submitted as an "addition to that provided by Genelex Corporation dated February 15, 1998." (*Id.*). Also attached as an exhibit to petitioner's motion was the Affidavit of Derek W. Gustafson, petitioner's trial attorney. (*Id.*). In his affidavit, Gustafson averred that the report he received from Genelex, which "tested all the areas of blood stain" on the victim's nightgown, provided that "the genetic material on the clothing item was supplied by a female thereby excluding [petitioner] as the source of the blood." (*Id.,* Affidavit of Derek W. Gustafson, ¶ 15). On January 17, 2001, the trial court overruled petitioner's motion for new trial without opinion. (*Id.,* Ex. 24).

Next, on March 23, 2001, petitioner filed a *pro se* motion for evidentiary hearing to present the DNA test results. (*Id.,* Ex. 32). The motion was denied by the trial court on May 9, 2001. (*Id.,* Ex. 33).

On September 12, 2001, petitioner, with the assistance of new counsel, filed a notice of delayed appeal from the trial court's ruling of May 9, 2001. (*Id.,* Ex. 34). On October 19, 2001, the Ohio Court of Appeals, First Appellate District, accepted the appeal as "timely filed." (*Id.,* Ex. 35). On appeal, petitioner challenged the trial court's ruling based on its failure to provide findings of fact and conclusions of law and on its application of the doctrine of *res judicata* in dismissing petitioner's motion. (*Id.,* Ex. 36). On August 30, 2002, the Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. 38). Petitioner apparently did not attempt to appeal the Ohio Court of Appeals' decision to the Supreme Court of Ohio. (*See id.,* Brief, p. 7).

Thereafter, on November 18, 2002, petitioner's new counsel filed a motion for leave to file a delayed appeal with the Ohio Court of Appeals, First Appellate District, from the trial court's January 17, 2001 ruling denying his motion for new trial. (*Id.,* Ex. 25). Petitioner was granted the delayed appeal, wherein he asserted as the sole assignment of error that the trial court erred in overruling "without comment his motion for a new trial to present the results of court-sanctioned, independently conducted DNA tests." (*Id.,* Ex. 27). On September 19, 2003, the Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (*Id.,* Ex. 29). Petitioner did not perfect a timely appeal from this decision to the Supreme Court of Ohio. Rather, nearly a year later on August 20, 2004, petitioner filed a *pro se* motion for leave to file a delayed appeal, which was denied by the Supreme Court of Ohio on October 13, 2004. (*Id.,* Exs. 30-31).

Petitioner also filed in the Ohio Court of Appeals, First Appellate District,

on August 31, 2004, an application for reopening of his appeal pursuant to Ohio R. App. P. 26(B). (*Id.*, Ex. 39). The Court of Appeals denied the application on December 6, 2004. (*Id.,* Ex. 40).

While his application for reopening was pending before the Ohio Court of Appeals for ruling, petitioner filed in the Hamilton County Common Pleas Court a *pro se* application for DNA testing under Ohio Rev. Code §§ 2953.72 and 3953.81. (*Id.,* Ex. 41). On November 1, 2004, an attorney from the Ohio Innocence Project entered an appearance on petitioner's behalf and filed a memorandum in support of petitioner's "previously filed application for post-conviction DNA testing." (*Id.,* Ex. 43). It appears from the present record that petitioner's motion was denied on June 29, 2005, and that the Ohio Innocence Project is currently "working on an appeal" from the trial court's decision in the state courts. (Doc. 15, p. 2).

The record reflects that petitioner initiated the instant habeas corpus action after the Supreme Court of Ohio denied his motion for leave to file a delayed appeal on October 13, 2004 and during the time his application for reopening was pending before the Ohio Court of Appeals for ruling. Although petitioner did not provide a date for his signature in the petition, it was stamped as "received" by the Court on November 3, 2004. (*See* Doc. 3, pp. 2, 7).

Petitioner asserts the following claim as the sole ground for habeas corpus relief:

> **Ground One:** The trial court denied petitioner's due process rights when it overruled w/o comment his motion for a new trial to present the results of court-sanctioned, independently conducted DNA tests.
>
> **Supporting Facts:** The trial court granted petitioner's Motion for Post-Trial DNA Testing, and ordered that a hearing date be set when such results were received. However, when the testing cleared petitioner as a donor of the tested stain, the trial court denied petitioner['s] Motion for New trial w/o a hearing, as it had earlier promised.

(*Id.*, p. 5).

## OPINION

**Petitioner's Motion For Stay Should Be Denied And The Petition Dismissed**

5


**With Prejudice Because Petitioner Has Waived His Claim For Habeas Relief**

Petitioner's counsel from the Ohio Innocence Project has moved to stay the instant habeas proceeding filed *pro se* pending the exhaustion of the appeal that is currently pending in the Ohio courts from the June 29, 2005 denial of petitioner's most recent application for further DNA testing. (Doc. 15). Respondent opposes the motion. (Doc. 16). Respondent contends that in the sole ground for relief, petitioner only challenges the trial court's January 17, 2001 decision refusing to grant him a new trial "after a post-conviction DNA test [allowed by the court] excluded him as the donor of blood on the rape victim's nightgown." (*Id.,* p. 1). Respondent further argues that this claim has been exhausted, and, in any event, is procedurally barred from review because it is time-barred and has been waived by petitioner due to his procedural default in the state courts. (*Id.*). Although it is debatable whether the petition is time-barred as respondent contends,[5] the remainder of respondent's argument has merit.

As respondent has pointed out, the state court ruling currently on appeal in the Ohio courts is not at issue in this case. Rather, petitioner is only challenging the trial court's decision in January 2001 to deny him a new trial based on results

---

[5] In this case, petitioner's claim is governed by the statute of limitations provision set forth in 28 U.S.C. § 2244(d)(1)(D), which provides that the statute does not begin to run until the factual predicate of the claim could have been discovered through the exercise of due diligence. Petitioner could not have discovered the factual basis for his claim until he was notified of the trial court's challenged order of January 17, 2001. A strong argument can be made that the statute of limitations, which could have been triggered as early as January 18, 2001, would have been tolled under 28 U.S.C. § 2244(d)(2) during the 30-day period in which petitioner could have filed an appeal as of right under Ohio R. App. P. 4(A). Therefore, the statute would not have commenced running until February 17, 2001, the day after the appeal period expired on February 16, 2001. The statute would have run for only 34 days before it was tolled from March 23, 2001 through October 14, 2002 by proceedings held on petitioner's *pro se* motion for evidentiary hearing; would have run again for only 34 more days from October 14 through November 17, 2002 before it was tolled again from November 18, 2002 through November 3, 2003 by proceedings held on petitioner's motion for delayed appeal; and would have run for 289 days before it was finally tolled from August 20, 2004 (when petitioner filed his motion for leave to file a delayed appeal with the Supreme Court of Ohio, followed by his application for reopening of his appeal and his recent application for DNA testing) until the instant petition was filed in November 2004. Based on these calculations, it appears that although the question is close, petitioner filed his federal habeas corpus petition with eight days remaining in the limitations period and that, therefore, the petition is not time-barred.

of a post-trial DNA test conducted some time between 1998 and 2000 by Genelex, which apparently excluded petitioner as the source of the blood found on the victim's nightgown. Although represented by counsel at least for purposes of his motion to stay the instant action, petitioner has not sought to withdraw or amend his petition based on any issues which have been raised by him in his most recent motion for further DNA testing denied by the trial court on June 29, 2005.

Petitioner has exhausted all available state remedies with respect to his sole ground for federal habeas corpus relief. He pursued an appeal to the Ohio Court of Appeals, which issued a decision on September 19, 2003 affirming the trial court's challenged judgment. (*See* Doc. 11, Exs. 27, 29). Moreover, he pursued a delayed appeal to the Supreme Court of Ohio, which issued a decision on October 13, 2004 denying petitioner leave to appeal. (*See id.,* Exs. 30-31).

Because it appears that petitioner has exhausted his sole claim for habeas corpus relief in the state courts, and because the matter currently pending on appeal in the state courts is not at issue in this case, it is RECOMMENDED that petitioner's motion for stay (Doc. 15) be DENIED.

As set forth herein, it is FURTHER RECOMMENDED that the petition for writ of habeas corpus (Doc. 3) be DISMISSED with prejudice based on respondent's argument raised in the return of writ and the memorandum in opposition to petitioner's motion for stay that petitioner has waived his sole claim for relief due to his procedural default in the state courts. (*See* Doc. 11, Brief, pp. 12-13; Doc. 16, p. 1).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of his claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default by failing to file a timely appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' decision of September 19, 2003 affirming the denial by the trial court on January 17, 2001 of petitioner's motion for new trial.  Although petitioner attempted to obtain a delayed appeal before the Supreme Court of Ohio, the Sixth Circuit has held in an analogous case that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal "constitutes a procedural ruling sufficient to bar federal court review of [a] habeas corpus petition."  *Bonilla v. Hurley,* 370 F.3d 494, 497(6th Cir.) (per curiam), *cert. denied,* 125 S.Ct. 506 (2004).  In so holding, the court reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits."  *Id.* (and unpublished Sixth Circuit cases cited therein).

Petitioner has failed to establish "cause" for his procedural default in the state courts.

Petitioner did argue to the Supreme Court of Ohio that as an "incarcerated defendant who is defending hims[el]f pro se," he "should be given the 'benefit of

the doubt' when it comes to assessing [his] ability to comply with the rules of appellate procedure" in Ohio, particularly given that he filed a timely notice of appeal with the Supreme Court of Ohio, but that the pleading "had the wrong case number on it." (Doc. 11, Ex. 30). This argument is insufficient, however, to establish cause to excuse petitioner's procedural default. In *Bonilla,* 370 F.3d at 498, the Sixth Circuit specifically rejected similar arguments for "cause" as follows:

> First, [petitioner's] pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. *See Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995). Second, [petitioner's] ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default. *See id.* . . .

In any event, even assuming that the Court should take into account that petitioner attempted a timely appeal to the Supreme Court of Ohio which was rejected based on certain technical, procedural requirements, petitioner has not established "cause" to the extent he has not provided any justification for his delay of approximately nine months in filing his motion for leave to file a delayed appeal with the Supreme Court of Ohio.

In addition, petitioner has not demonstrated a fundamental miscarriage of justice will occur if his procedurally-defaulted claim for relief is not addressed on the merits by this Court.

In order to establish a fundamental miscarriage of justice, petitioner must show that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent" of the crime charged. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005) (upholding equitable tolling of one year statute of limitations governing habeas petitions "based on a credible claim of actual innocence"). Under this standard, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including . . . evidence tenably claimed to have been wrongly excluded or to have become available only

9

after the trial." *Schlup,* 513 U.S. at 327-28 (citing with approval the standard enunciated by Judge Friendly in a 1970 law review article, *Is Innocence Relevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 145 (1970)). In order to pass through the actual innocence gateway, a petitioner's case must be "truly extraordinary." *Schlup,* 513 U.S. at 327.

Here, petitioner claimed in support of his new trial motion that the results of the post-trial DNA testing constituted new evidence of his innocence that was not before the jury. (*See* Doc. 11, Ex. 25). The same argument was raised on delayed appeal to the Ohio Court of Appeals. (*See id.,* Ex. 27). As the only state court to issue a reasoned decision addressing this argument, the Ohio Court of Appeals found that the post-trial DNA-test results constituted material evidence regarding the "pivotal issue" of identity to the extent the results "wholly negated any inference that might have arisen from the blood-type evidence [presented to the jury] concerning Elliott's identity as the intruder"–i.e., that "blood on the victim's nightshirt [matched] Elliott's blood type, AB, the rarest of all blood types." (*Id.,* Ex. 29, pp. 5-6). However, the court went on to conclude that "in the context of the record as a whole, we cannot say that the new evidence disclosed a strong probability that it would change the outcome if a new trial were granted." (*Id.,* p. 6).

Additional evidence in the record tending to inculpate petitioner included the victim's description of her attacker and, most importantly, fingerprints matching petitioner's that "were found in two places in the victim's house: on the outside of a patio door leading from an elevated balcony into the house, and on a bottle of wine that, the victim testified, had been stored in a box in her basement from the mid-1980s, when she won it at a high-school raffle, until the night in question, when she awoke to find it standing in the middle of her bedroom floor." (*Id.,* pp. 5-6; *see also id.,* Ex. 10, p. 2). According to the state appellate court, petitioner had taken the stand at trial "and offered a somewhat plausible explanation for the presence of his fingerprints on the patio door by testifying that he had peeked through the door while searching in the victim's neighborhood for a house for his grandmother." (*Id.,* Ex. 29, p. 6). Apparently, petitioner also attempted to explain the presence of his fingerprints on the wine bottle by testifying that in 1990, he had worked at a grocery store in the victim's neighborhood. (*Id.*). However, in light of the victim's testimony that the "wine bottle had been stored in a box in her basement from the mid-1980s until the night of her assault," the court found that

10

petitioner's testimony "left the trier of fact with no innocent explanation for the presence of his fingerprints on the bottle." (*Id.*).

Upon review of all the evidence set forth in the present record, including petitioner's "new" evidence, as well as the inculpatory fingerprint evidence, this Court similarly concludes that petitioner has not shown it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt if the post-trial DNA test results had been presented at trial.

Accordingly, in sum, the Court concludes that petitioner committed a procedural default with respect to his sole claim for relief by failing to file a timely appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' decision affirming the denial of his motion for new trial on January 17, 2001. Because petitioner has neither shown "cause" for his procedural default nor made a sufficiently credible showing of his "actual innocence" in this case, the Court concludes that petitioner has waived his claim for relief and that, therefore, the petition should be dismissed with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's "Motion For Leave To Stay Habeas Proceedings Pending Exhaustion Of State Remedies" (Doc. 15) be DENIED.

2. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 3) be DISMISSED with prejudice on the ground that petitioner has waived his sole ground for relief.

3. A certificate of appealability should not issue with respect to any Order adopting this Report and Recommendation to deny petitioner's motion for stay and to dismiss the petition with prejudice on procedural waiver grounds, because pursuant to the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[6]

---

[6] Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims for

      4. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  10/13/05                             s/Timothy S. Black
       cbc                                      Timothy S. Black
                                              United States Magistrate Judge

J:\BRYANCC\2005 habeas orders\04-780denydna-exhstay.sol-waiv-bar.wpd

---

relief in the petition. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Joseph C. Elliott,
    Petitioner,

                                   Case No. 1:04cv780
      v.                           (Beckwith, C.J.; Black, M.J.)

Patrick Hurley,
    Respondent.

## NOTICE

      Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).